O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY K. THOMPSON,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | No. EDCV 15-615 FFM<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff Judy K. Thomspon ("plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the April 14, 2015 case management order, on January 29, 2016, the parties filed a joint stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the joint stipulation and the administrative record ("AR"), filed by defendant on October 16, 2015. For the reasons stated below, the decision of the Commissioner is affirmed.

/ / /

/ / /

/ / /

## I. PRIOR PROCEEDINGS

On April 23, 2008, plaintiff applied for supplemental security income benefits, alleging an onset date of November 1, 2002. (AR 299-305, 324.) Plaintiff alleged disability based on multiple sclerosis ("MS") and a seizure disorder. (AR 324.) Plaintiff's application was denied initially and on reconsideration. (AR 108-116.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 117.) ALJ Helen E. Hesse held a hearing on February 1, 2011. (AR 61-83.) Plaintiff appeared with counsel and testified at the hearing. (*See id.*) On March 11, 2011, ALJ Hesse issued a decision denying benefits. (AR 86-99.) Plaintiff sought review by the Social Security Administration Appeals Council. (AR 227.) On August 8, 2012, the Appeals Council reversed ALJ Hesse's decision and remanded plaintiff's case for further administrative proceedings. (AR 104-06.)

On remand, ALJ Alan J. Markiewicz held a hearing on April 30, 2013. (AR 29-60.) Plaintiff appeared with counsel and testified at the hearing. (*See id.*) On June 28, 2013, ALJ Markiewicz issued a decision denying benefits. (AR 12-23.) Plaintiff sought review by the Appeals Council. (AR 11.) On January 28, 2015, the Appeals Council denied the request for review. (AR 1-3.)

Plaintiff filed the complaint herein on March 31, 2015.

## II. PLAINTIFF'S CONTENTION

Plaintiff raises the following issue:

Whether the ALJ properly considered the opinion of the treating physician. (JS 4.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this court reviews the Commissioner's denial of benefits to determine whether: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d

2

715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). However, even if substantial evidence exists in the record to support the ALJ's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

## IV. DISCUSSION

A. <u>Background</u>.

    (1)    *The record prior to the Appeals Council remand.*

        (a)    *Dr. Rosenthal's opinion.*

Between 2002 and 2011, plaintiff received treatment for her neurological symptoms from Joanna Rosenthal, M.D. (*See* AR 486-90.) Dr. Rosenthal's treatment notes were not included in the administrative record before ALJ Hesse. (*See* AR 375-490.) However, Dr. Rosenthal summarized plaintiff's treatment in a "Neurology Permanent Stationary Report" dated February 5, 2011.[1] (AR 486-90.)

---

[1] On August 8, 2008, Dr. Rosenthal provided a medical statement diagnosing plaintiff with epilepsy, MS, and migraines. (AR 429.) Dr. Rosenthal opined that plaintiff had a poor prognosis and was likely to have (*inter alia*) chronic fatigue, weakness, numbness, and poor balance. (AR 429.) ALJ Hesse discussed this statement, but did not explicitly accept or reject it as opinion evidence. (AR 96; *see* AR 97.) ALJ Markiewicz did not discuss it. (*See* AR 20-22.) Neither omission constitutes reversible error. First, Dr. Rosenthal's statement is not an opinion within

(continued...)

3

As set forth by Dr. Rosenthal, and in pertinent part, plaintiff first presented with MS symptoms in November 2002, when she was admitted to a hospital with vertigo and vomiting. (AR 486.) A brain MRI revealed multiple foci of increased intensity and areas of lesions in the corpus callosum, which the radiologist interpreted as signs of MS. (AR 486, 488.) After treatment with Solu-Medrol, plaintiff's balance improved. (AR 486.) She did well on Copaxone. (*Id.*)

In 2003, plaintiff suffered migraines, fever blisters, poor balance, numbness, and fatigue. Her symptoms improved with medication, including Solu-Medrol, Fioricet, and Zovirax. (AR 486-87.) Despite suffering fatigue, plaintiff was able to find occasional work as a notary. (*Id.*)

In late 2003 and early 2004, plaintiff had episodes of electric shock-like sensations down her back and leg (Lhermitte's sign), leg stiffness and/or twitching, and staring. (AR 487.) In February 2004, after one such episode, she was hospitalized and put on a Dilantin drip. She was taken off driving for several months (*Id.*) There were several similar episodes later in 2004. (*Id.*) Plaintiff was placed on a daily Dilantin regimen. She continued with other medications, including Copaxone and Solu-Medrol. (*Id.*) Brain imaging studies in 2004 and 2005 revealed lesions in the left brachium pontis, left high posterior parietal lobe, left frontal lobe, and left parietal lobe. (AR 488.) In 2008 and 2009, plaintiff seemed to deteriorate slightly, with more fatigue, as her family stressors increased. (AR 487.)

In the same February 2011 statement, Dr. Rosenthal reported that on current examination, plaintiff had numbness in the right lower extremity and slightly abnormal

---

[1](...continued)
the meaning of the Social Security regulations, as it does not set forth her conclusions about what plaintiff would still be able to do despite her impairments. *See* 20 C.F.R. § 416.927(a)(2). Therefore, the ALJs were not required to assess this statement as opinion evidence under 20 C.F.R. § 416.920(c). Second, as discussed *infra*, ALJ Markiewicz did not commit reversible error with regard to the evidence bearing on plaintiff's physical impairments.

lower extremity reflexes. Otherwise, plaintiff's findings on examination were within normal limits. (AR 488.) Plaintiff's nystagmus and wide-based gait were controlled with steroid medication. (*Id.*) Dr. Rosenthal opined that plaintiff was "disabled" and unable to work because of fatigue, weakness, and poor control of the lower extremities. (AR 489.) She further opined that plaintiff was a fall risk and could not be "retrained" because of depression and poor judgment. (*Id.*) She noted that plaintiff's MS and epilepsy were controlled with medication, but plaintiff was at risk of a "devastating collapse of the nervous system" if she were ever unable to afford medication. (*Id.*)

    (b) *Other pertinent medical evidence.*

Plaintiff submitted records from sources other than Dr. Rosenthal. The records included the brain imaging studies from 2005 and medication records from 2007. The latter showed that plaintiff was prescribed Copaxone, Keppra, Topomax, and other medications to treat her MS, seizures, and migraines (AR 436-39, 442-50.)

Plaintiff underwent a consultative neurological examination with Robert A. Moore, M.D., on June 2, 2008. (AR 396-99.) Dr. Moore reported that plaintiff had a "very minimally" unsteady gait and poor balance and could not perform a tandem walk. (AR 397-98.) Her examination was otherwise unremarkable. (*See id.*) In pertinent part, Dr. Moore opined that plaintiff could not engage in certain tasks (such as working at heights) because of her seizures. (AR 399.) He further opined that plaintiff had apparently legitimate complaints of fatigue, which could lead to additional functional limitations. (*Id.*) Otherwise, plaintiff could perform light work. (*Id.*; *see* Social Security Ruling ("S.S.R.") 83-10, 1983 WL 31251, *6 (S.S.A.).)

  (2) *ALJ Hesse's decision.*

In her 2011 decision, ALJ Hesse found that plaintiff had the severe and medically-determinable impairments of MS and a history of seizures. (AR 91.) She concluded that plaintiff could perform light work with limitations similar to those to which Dr. Moore opined. (AR 92.) After reviewing the medical record in detail, ALJ

Hesse rejected Dr. Rosenthal's opinion, reasoning (*inter alia*) that whether a claimant was disabled was an administrative determination rather than a medical one. (AR 96-97.)

Despite giving "significant weight" to an examining psychologist's opinion diagnosing plaintiff with a mood disorder and assigning mental restrictions, ALJ Hesse did not find that plaintiff had a severe, medically-determinable mental impairment. (AR 91, 95, 97.)

   (3)   *The Appeals Council remand.*

On review, the Appeals Council found that further consideration of the nature and severity of plaintiff's mental impairment was required. (AR 105.) The Appeals Council ordered the ALJ to:

- evaluate plaintiff's mental impairment under 20 C.F.R. § 416.920a;
- "[i]f warranted by the expanded record," give further consideration to plaintiff's RFC and provide a rationale with specific references to record evidence; and
- "[i]f warranted by the expanded record," obtain supplemental evidence from a vocational expert ["VE"].

(AR 105-106.) The Appeals Council did not explicitly order the ALJ to reconsider plaintiff's physical impairments or Dr. Rosenthal's opinions. (*See id.*)

   (4)   *The record after remand and ALJ Markiewicz's opinion.*

After the second hearing, plaintiff submitted approximately a dozen pages of treatment records from Dr. Rosenthal. The records set forth plaintiff's treatment from October 2006 through March 2010. (AR 574-87.) In October 2006, plaintiff reported having fatigue and occasional migraines, which were better on Topomax. (AR 587.) Dr. Rosenthal reported a normal physical examination except for numbness in the right lower extremity. She released plaintiff for driving, as plaintiff had had no recent

seizure activity. (*Id.*) In November 2006, plaintiff reported that her right leg made running difficult, but her seizures were under control. She had a poor tandem gait and tenderness in the paraspinal region. (AR 586.) In May 2007, plaintiff reported feeling fatigued. Her findings on examination were normal. (AR 584.) In September and December 2007, plaintiff had "trace" difficulty with tandem gait on examination. (AR 582-83.)

In April 2008, plaintiff reported tingling in the right leg and fatigue. Dr. Rosenthal prescribed steroids. (AR 581.) In August 2008, Dr. Rosenthal reported abnormal findings on the pinprick test in the right lower extremity and slight difficulty with tandem gait. (AR 579.) In May 2009, Dr. Rosenthal reported that plaintiff had had a flare-up of her MS, "probably aggravated by situational stress." (AR 578.) In December 2009, plaintiff reported minimal seizure activity, without complete loss of consciousness. It was usually well controlled by Topomax. She had minimal spasticity and numbness in her left leg. She had done well on Copaxone for about six months, with no MS attacks. (AR 577.) On physical examination, plaintiff had hyperactive reflexes in the lower extremities and a poor tandem gait. (*Id.*; AR 492.)

In March 2010, plaintiff reported tremors in the morning and headaches. She was feeling stress over the forthcoming loss of her insurance. (AR 574.) Plaintiff's physical examination revealed a poor tandem gait, but was otherwise normal. (*Id.*) Dr. Rosenthal concluded plaintiff's MS was exacerbated by stress and situational depression. (AR 574.) She further reported that plaintiff functioned "extremely well" on Copaxone and seizure medication. (*Id.*) With medication, plaintiff was able to drive, fix meals for her family, and do household chores. (*Id.*) Dr. Rosenthal recommended an EEG and emphasized the need for plaintiff to continue with her medication. (*Id.*)

Plaintiff submitted treatment records from other sources dating from 2008 through early 2013. (AR 491-569.) Her treating sources described her MS and

///

epilepsy as stable, controlled by medication, or improving. (*See, e.g.*, AR 523-24, 529, 530, 532, 550, 552, 553, 560.)

In his decision, ALJ Markiewicz concluded that plaintiff had the severe, medically-determinable impairments of MS, a seizure disorder, and depression. (AR 18.) He did not explicitly address Dr. Rosenthal's opinion. Nor did he discuss the additional treating records in any detail. (*See* AR 20-22.) Instead, he stated:

> The summary of medical evidence of record from the prior decision of an ALJ Hesse in this case dated March 11, 2011, is incorporated by reference . . . . The undersigned has reviewed and considered the complete medical history consistent with 20 CFR 416.912(d), including the new medical evidence that has been added to the record [which] includes Exhibits 14F through 16F [*i.e.*, AR 491-587]. This current decision includes discussions of the claimant's testimony at the most recent hearing and the new medical evidence that has been added to the record since the date of the prior decision. The treatment records reveal that the claimant received routine, conservative, and non-emergency treatment since the alleged onset date. That is consistent with the conclusion reached regarding her functional limitations.

(AR 21.) After briefly discussing Dr. Moore's opinion and the opinions of the state agency physicians, the ALJ found that plaintiff had the RFC to perform light work with limitations similar, but not identical, to those assigned by ALJ Hesse. (AR 19, 21.)

B.  Analysis.

Plaintiff acknowledges that ALJ Markiewicz incorporated ALJ Hesse's "summary" of the medical evidence into his own decision. (JS 8.) Plaintiff contends, however, that there is a difference between "summarizing" evidence and "analyzing" it. Relying on that distinction, plaintiff asserts that by incorporating only ALJ Hesse's

"summary" of the evidence, ALJ Markiewicz failed to incorporate her *rationale* for rejecting Dr. Rosenthal's opinion. (*Id.*) Therefore, plaintiff argues, ALJ Markiewicz committed reversible error by (1) ignoring Dr. Rosenthal's opinion; and (2) ignoring the Appeals Council's remand order. (*Id.*) The Court disagrees.

First, it is reasonable to read ALJ Markiewicz's decision as incorporating ALJ Hesse's entire discussion of the medical evidence, not merely her summary. The remand order focused on plaintiff's mental impairments, and did not explicitly require the ALJ to reconsider plaintiff's physical impairments. Therefore, the efficient approach to complying with the order would be to incorporate, rather than redo, ALJ Hesse's extensive analysis of plaintiff's physical impairments – including her assessment of Dr. Rosenthal's opinion. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (noting that law of case applies to prior ALJ findings in Social Security cases, and doctrine "is concerned primarily with efficiency . . . .").

Second, to the extent the remand order bore on plaintiff's physical impairments, it merely required the ALJ to reconsider plaintiff's RFC and obtain new VE testimony, "[i]f warranted by the expanded record." ALJ Markiewicz did reconsider plaintiff's RFC and did obtain new VE testimony (AR 55-58). Moreover, he addressed the expanded record, albeit briefly, by noting that the new medical evidence showed routine, non-emergency treatment. This assessment is adequate. Although the expanded record provides more information regarding plaintiff's treatment in 2006-2007 and 2010, it does not paint a different picture from that presented by Dr. Rosenthal's 2011 statement. Rather, it merely confirms that after her 2002 and 2004 hospitalizations, plaintiff received conservative, medication-based treatment that was largely effective in controlling her symptoms. In fact, in 2010, Dr. Rosenthal emphasized that plaintiff functioned extremely well while on medication. Accordingly, the Court cannot conclude that ALJ Markiewicz ignored the remand order in failing to provide a more in-depth analysis of plaintiff's neurological impairments. *See* 20 C.F.R. § 416.1477(b) (when Appeals Council remands case to ALJ, ALJ "shall take any action

that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order").

As the Court understands it, plaintiff argues in the alternative that if ALJ Markiewicz in fact incorporated ALJ Hesse's analysis, he committed reversible error because (1) ALJ Hesse's rejection of Dr. Rosenthal's opinion lacked merit; and/or (2) the updated record negated the grounds on which ALJ Hesse relied in rejecting Dr. Rosenthal's opinion. (*See* JS 8-9.) The Court disagrees. First, as plaintiff acknowledges (JS 6), the ultimate question of disability is a legal determination reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). Therefore, ALJ Hesse was not required to give "any special significance" to Dr. Rosenthal's statement that plaintiff was "disabled." 20 C.F.R. §§ 416.927(d)(1), 416.927(d)(3).[2]

Second, ALJ Hesse provided sufficient additional grounds for rejecting the opinion. As plaintiff asserts (JS 7-8), an ALJ is required to provide specific, legitimate, record-supported reasons for rejecting a treating physician's opinion that is contradicted by the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. § 416.927(c)(2). In the first hearing, plaintiff's testimony indicated that she saw Dr. Rosenthal about once a year. (*See* AR 75.) The updated medical record shows that she saw Dr. Rosenthal two or three times a year. (*See* discussion, *supra*.) The difference is immaterial to ALJ Hesse's analysis.

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."

---

[2] The Court further notes that Dr. Rosenthal did not assign plaintiff any concrete limitations beyond asserting she was disabled. Dr. Rosenthal stated only that (1) plaintiff would be a fall risk, which ALJ Hesse took into account, and (2) plaintiff could not be "retrained," which is an administrative conclusion (*see* 20 C.F.R §§ 416.960 *et seq.*). Accordingly, the Court is not convinced that ALJ Hesse was required to provide additional grounds for giving less weight to Dr. Rosenthal's opinion.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In turn, an ALJ may find a claimant incredible as to her subjective claims upon: (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Here, as ALJ Hesse noted (AR 96), plaintiff told Dr. Rosenthal in 2003 that she was working part-time as a notary, but she testified at the first hearing that she had never worked. (AR 69, 487.) In addition, plaintiff appeared to exaggerate her symptoms at the consulting examination.[3] (AR 405, 406.) It was reasonable for ALJ Hesse to conclude that plaintiff's lack of transparency about her job and her decreased effort on psychological testing made her less believable in general. *See Benton*, *supra*; *see also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (ALJ may use "ordinary techniques of credibility evaluation" to find plaintiff incredible). In turn, it was reasonable for ALJ Hesse to give less weight to Dr. Rosenthal's opinion on the ground that it was based in large part on plaintiff's self-reported symptoms. (AR 97.) Furthermore, the updated record did not require reconsideration of this rationale. Plaintiff did not undergo a second psychological consultative examination, and she repeated her claim about not working at the second hearing. (AR 34-35.)

ALJ Hesse relied in addition on discrepancies between Dr. Rosenthal's conclusions and the medical evidence. (AR 96, 97.) According to Dr. Rosenthal's 2011 summary, plaintiff had not been hospitalized since 2004, and many of her symptoms were reduced or eliminated with medication. Furthermore, her latest

///

///

---

[3] In fact, the examining psychologist reported that plaintiff obtained a score of 33 out of 50 on Trial II of the Test of Memory Malingering, "compelling evidence" that plaintiff "exerted a sub-optimal effort during [the] evaluation." (AR 406.) This evidence of malingering is sufficient in itself to undermine plaintiff's credibility. *See Benton*, *supra*.

physical examination was largely normal.[4] ALJ Hesse could have interpreted the record more favorably to plaintiff, *e.g.* by focusing on plaintiff's continuing complaints of fatigue. However, her conclusion that Dr. Rosenthal's opinion was inconsistent with the medical evidence was reasonable and therefore entitled to deference. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). These inconsistencies are valid reasons for giving less weight to Dr. Rosenthal's opinions. *See* 20 C.F.R. § 416.927(c)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given). And as discussed, the updated medical record did not alter this picture. Therefore, there was no need for ALJ Markiewicz to revisit this rationale.

Finally, ALJ Hesse faulted Dr. Rosenthal for failing to support her opinion with treatment notes. (AR 97.) As plaintiff asserts, this basis for rejection did not apply after the record was updated. However, given the remaining valid grounds for rejecting the opinion, any error in ALJ Markiewicz's failure to revisit this rationale was harmless. *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination").

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: December 14, 2016  /S/FREDERICK F. MUMM  
                                                                FREDERICK F. MUMM  
                                                         United States Magistrate Judge

---

[4] As ALJ Hesse noted (AR 97), Dr. Rosenthal reported in the 2011 statement that plaintiff had 5/5 strength on examination, but based her opinion on plaintiff's alleged 3/5 strength on examination. (*See* AR 488, 489.)